GOSHORN, Judge.
Emily Black Pyne appeals after the trial court denied her motion for contempt based upon the former husband’s failure to pay child support. Her former husband, James L. Black, ceased paying any child support for the parties’ two daughters after February 6, 1981, when the younger girl was 12 years old and the older girl was 16 years old. Black’s child support obligations ran through the time the girls turned 21 years of age, pursuant to the parties’ 1972 dissolution decree, and thus was a “limbo” judgment[1] to the extent it encompassed the child support payments which accrued after the girls turned 18. This motion was brought 12 years after Black ceased paying child support and 4 years after the younger girl reached 21 years of age.
The trial court made its ruling after conducting an evidentiary hearing and considering the depositions of the parties. Judge MeNeal’s well reasoned opinion, which is set out in its entirety, is fully supported by the record. Judge McNeal wrote:

ORDER DENYING FORMER WIFE’S MOTION FOR CONTEMPT

Upon consideration of the former wife’s Motion for Contempt and the evidence presented by the parties, the court finds that the former wife’s attempt to collect child support twelve years after the former husband stopped paying and four years after the youngest child attained the age of 21 is barred by equitable estoppel and laches and that the former wife does not have standing to collect post-majority child support.
In 1980 the former husband returned permanently to Marion County and attempted to establish normal visitation with his children. The former wife rebuffed the former husband’s request to establish frequent and continuing contact with the children by denying him visitation at Thanksgiving and at Christmas in 1980.
This was the first time the parties experienced any problems with visitation. Before then the former husband contacted the former wife when he was able to visit and she made the children available. This flexible arrangement was necessary because the former husband worked all over the world for extended periods of time and it was impossible for him to exercise normal visitation. The former wife was comfortable with this arrangement and did not want to increase this infrequent contact. She had remarried. She had a new baby and she was afraid more frequent visitation would disrupt the new family’s routine.
The former husband retained an attorney in January, 1981 and requested a specific visitation schedule. The former wife hired an attorney and opposed the former husband’s request without offering any *1075 hope for negotiation. After the response from his former wife’s attorney, the former husband stopped paying support. The former wife consulted her attorney who “understood ... the situation.” He advised her that under the circumstances she should not bring her former husband to court if she could get along without the support. Based on his advice she made an informed and voluntary decision to forgo her right to child support because the former husband would have insisted on his right to visitation with the children. Neither party asserted their rights in court, each relying on the other’s unspoken agreement to not litigate these issues.
The former husband never visited with his children again. In the years that followed her decision, the former wife did not make even the slightest effort to encourage contact between the children and their father. Her refusal to foster and encourage a relationship between the children and their father is graphically illustrated by the children’s Christmas gifts from their father in 1981 which have remained in her attic for almost twelve years, unopened.
In 1981 the law allowed a noncustodial parent to withhold support when the custodial parent failed or refused to allow visitation. See, e.g., Warrick v. Hender, 198 So.2d 348 (Fla.1967) (proper to deny contempt for nonpayment of support where second husband performed the role of father for the step-children and although the first husband was granted reasonable visitation in the divorce decree, contact between him and the children was virtually nonexistent); Craig v. Craig [157 Fla. 710], 26 So.2d 881 (Fla.1946) (refusal to permit visitation is sufficient legal defense to action to enforce support); Phillips v. Adams, 339 So.2d 665 (Fla. 4th DCA 1976) (court erred in not allowing father to present evidence that mother denied him visitation in response to an order to show cause for nonpayment of support); Denton v. Denton, 147 So.2d 545 (Fla. 2d DCA 1962) (requiring father to pay child support arrearage for time when mother failed to allow visitation was error). Withholding support was an acceptable method of enforcing visitation, but there was not a corresponding rule that allowed a custodial parent to withhold visitation when child support was not paid. Howard v. Howard, 143 So.2d 502 (Fla. 3d DCA 1962). The law did not change until 1986 when the legislature enacted § 61.13(4)(b).' Effective October 1, 1986 a noncustodial parent could no longer withhold support when a custodial parent refused to allow visitation.
Ordinarily parents may not contract away the rights of their children to support or waive their children’s right to support by acquiescence. Lee v. Lee, 157 Fla. 439, 26 So.2d 177 (1946); Robinson v. DHRS, 473 So.2d 228 (Fla. 5th DCA 1985). This rule makes sense where minor children can use the support or where the custodial parent has expended funds above that parent’s legal obligation to provide support, but in this case the youngest child is 25 years old and there is not any evidence that the former wife expended any funds above her obligation to pay support. Also, the children did not endure any hardship and did not have to rely on public assistance. See Gibson v. Bennett, 561 So.2d 565 (Fla.1990) (discussion of reasons for enforcing support after emancipation). Even though waiver and emancipation are not legal defenses, the doctrines of equitable estoppel and laches prevent the former wife from enforcing the child support under the circumstances of this case.
In order to establish the defense of lach-es the former husband must prove the four elements set forth in Van Meter v. Kelsey, 91 So.2d 327 (Fla.1956). The first three elements concern the wife’s delay in asserting her right to support in court. Since 1981, the former wife has known how to contact the former husband. He has lived at the same address in Marion county with the same listed telephone number. She has not offered a reasonable explanation for her delay in bringing this action to collect support.
However, unreasonable delay is insufficient by itself to prove laches. Cartee v. Carswell, 425 So.2d 204 (Fla. 5th DCA 1983). The significant question is whether the former husband suffered legal preju *1076 dice from her delay. Legal prejudice results when there is a loss or injury to a person who relies on another person’s voluntary failure to exercise a legal right. This is primarily a question of equity and depends on the unique circumstances of each individual case.
Both parties are at fault for failing to fulfill their obligations as parents, but the lost child support did not deprive the children of any of life’s necessities. It will not affect their current welfare. In contrast, the lost visitation deprived the former husband and the children of a father-daughter relationship. The opportunity to form that relationship is lost forever and cannot be repaid. For this reason the former husband suffered legal prejudice. See Robinson v. DHRS at 229 (where children’s current welfare was not affected there was not a compelling reason for refusing to apply laches; lost visitation may establish legal prejudice).
On the issue of standing the court finds that the former wife did not prove that she provided any support for the children beyond her own legal responsibility. The former wife does not have standing to enforce the children’s right to post-majority child support arrearage. DHRS v. Holland, 602 So.2d 652 (Fla. 5th DCA 1992); Cronebaugh v. Van Dyke, 415 So.2d 738 (Fla. 5th DCA 1982), review denied, 426 So.2d 25 (Fla.1983).
ORDERED AND ADJUDGED AS FOLLOWS:
1. The former wife’s motion for contempt is denied.
2. Collection of the past due child support is barred.
3. Each party shall pay their own attorney’s fees and costs.
DONE AND ORDERED at Ocala, Marion County, Florida this 17th day of August, 1993.
/S/ Raymond T. MeNeal Circuit Judge
We are bound by the facts (supported by the evidence) found by the trial judge and affirm Judge McNeal’s order in its entirety. See Helman v. Seaboard Coast Line R.R. Co., 349 So.2d 1187, 1189 (Fla.1977) (stating that it is not the appellate court’s function to reevaluate evidence and to substitute its judgment for that of the fact finder); GNB, Inc. v. United Danco Batteries, Inc., 627 So.2d 492, 493 (Fla. 2d DCA 1993) (same).
AFFIRMED.
COBB, JJ., concurs.
W. SHARP, J., dissents with opinion.

. See Cronebaugh v. Van Dyke, 415 So.2d 738 (Fla. 5th DCA 1982), review denied, 426 So.2d 25 (Fla.1983).